**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

```
-----------------------------x
                             :
CHRISTINE MCINTIRE           :    Civil No. 6:17CV06887 (HBF)
                             :
v.                           :
                             :
NANCY A. BERRYHILL, ACTING   :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION               :
                             :
-----------------------------x
```

## RULING ON CROSS MOTIONS

Plaintiff Christine McIntire brings this action pursuant to 42 U.S.C. §405(g), seeking review of a final decision of the Commissioner of Social Security which denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §401 et seq. ("the Act"). Plaintiff has moved to reverse or remand the case for a rehearing. The Commissioner has moved to affirm.

For the reasons set forth below, plaintiff's Motion for Judgment on the Pleadings **[Doc. #12]** is **DENIED.** Defendant's Motion and Motion for Judgment on the Pleadings **[Doc. #19]** is **GRANTED.**

## I.  ADMINISTRATIVE PROCEEDINGS

The procedural history of this case is not disputed. Plaintiff protectively filed an application for DIB on September

1

5, 2014, alleging disability as of September 1, 2014.[1] [Certified Transcript of the Record, Compiled on February 5, 2018, Doc. #8 (hereinafter "Tr.") 264, 276, 344-47, 360, 426]. Plaintiff alleged disability due to depression, COPD, learning disability, arthritis, fibromyalgia, herniated disc-cervical, degenerative spine disease cervical and lumbar, gastroparesis, paralyzed right vocal fold (from surgery), tendonitis in right elbow, diverticulitis, cyst on ovaries, allergies and feet problems. [Tr. 263]. Her DIB claim was denied on December 8, 2014. [Tr. 263-276]. Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") on December 12, 2014. [Tr. 284, 285-86].

On February 24, 2016, Administrative Law Judge ("ALJ") Lisa B. Martin held a hearing, at which plaintiff appeared with an attorney and testified. [Tr. 231-62]. Vocational Expert ("VE") Donna Bardsley also testified at the hearing. [Tr. 255-61]. On April 20, 2016, the ALJ found that plaintiff was not disabled, and denied her claim. [Tr. 8-27]. Plaintiff filed a timely request for review of the hearing decision on April 22, 2016. [Tr. 337]. On November 15, 2017, the Appeals Council denied review, thereby rendering ALJ Smith's decision the final decision of the Commissioner. [Tr. 1-7]. The case is now ripe

_____

[1] Plaintiff's date last insured for Title II benefits is December 31, 2019. [Tr. 13].

for review under 42 U.S.C. §405(g).

Plaintiff, represented by counsel, timely filed this action for review and moves to reverse and/or remand the Commissioner's decision.

## II.   STANDARD OF REVIEW

The review of a social security disability determination involves two levels of inquiry. First, the Court must decide whether the Commissioner applied the correct legal principles in making the determination. Second, the Court must decide whether the determination is supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998) (citation omitted). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion; it is more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The reviewing court's responsibility is to ensure that a claim has been fairly evaluated by the ALJ. Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983) (citation omitted).

The Court does not reach the second stage of review – evaluating whether substantial evidence supports the ALJ's conclusion – if the Court determines that the ALJ failed to apply the law correctly. See Norman v. Astrue, 912 F. Supp. 2d 33, 70 (S.D.N.Y. 2012) ("The Court first reviews the Commissioner's decision for compliance with the correct legal

standards; only then does it determine whether the Commissioner's conclusions were supported by substantial evidence."). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

"[T]he crucial factors in any determination must be set forth with sufficient specificity to enable [a reviewing court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) (alteration added) (citation omitted). The ALJ is free to accept or reject the testimony of any witness, but a "finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988) (citation omitted). "Moreover, when a finding is potentially dispositive on the issue of disability, there must be enough discussion to enable a reviewing court to determine whether substantial evidence exists to support that finding." Johnston v. Colvin, Civil Action No. 3:13-CV-00073(JCH), 2014 WL 1304715, at *6 (D. Conn. Mar. 31, 2014)

(internal citations omitted).

It is important to note that in reviewing the ALJ's decision, this Court's role is not to start from scratch. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012) (citations and internal quotation marks omitted). "[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision." Bonet ex rel. T.B. v. Colvin, 523 F. App'x 58, 59 (2d Cir. 2013)(citations omitted).

## III. SSA LEGAL STANDARD

Under the Social Security Act, every individual who is under a disability is entitled to disability insurance benefits.

To be considered disabled under the Act and therefore entitled to benefits, Ms. McIntire must demonstrate that she is unable to work after a date specified "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Such impairment or impairments must be "of such severity that [s]he is not only unable to do

5

h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); see also 20 C.F.R. §404.1520(c) (requiring that the impairment "significantly limit[ ] ... physical or mental ability to do basic work activities" to be considered "severe").[2]

There is a familiar five-step analysis used to determine if a person is disabled. See 20 C.F.R. §404.1520(a)(4). In the Second Circuit, the test is described as follows:

> First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam). If and only if the claimant does not have a listed impairment, the Commissioner engages in the fourth and fifth

---

[2] DIB and SSI regulations cited herein are virtually identical. The parallel SSI regulations are found at 20 C.F.R. §416.901 et seq., corresponding to the last two digits of the DIB cites (e.g., 20 C.F.R. §404.1520 corresponds with 20 C.F.R. §416.920).

steps:

> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's
> severe impairment, he has the residual functional
> capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the
> Secretary then determines whether there is other work
> which the claimant could perform. Under the cases
> previously discussed, the claimant bears the burden of
> proof as to the first four steps, while the Secretary
> must prove the final one.

Id.

"Through the fourth step, the claimant carries the burdens
of production and persuasion, but if the analysis proceeds to
the fifth step, there is a limited shift in the burden of proof
and the Commissioner is obligated to demonstrate that jobs exist
in the national or local economies that the claimant can perform
given his residual functional capacity." Gonzalez ex rel. Guzman
v. Dep't of Health and Human Serv., 360 F. App'x 240, 243 (2d
Cir. 2010) (citing 68 Fed. Reg. 51155 (Aug. 26, 2003)); Poupore
v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam)).
"Residual functional capacity" is what a person is still capable
of doing despite limitations resulting from his physical and
mental impairments. See 20 C.F.R. §§404.1545(a), 416.945(a)(1).

"In assessing disability, factors to be considered are (1)
the objective medical facts; (2) diagnoses or medical opinions
based on such facts; (3) subjective evidence of pain or
disability testified to by the claimant or others; and (4) the

claimant's educational background, age, and work experience."
Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978) (citation
omitted). "[E]ligibility for benefits is to be determined in
light of the fact that the Social Security Act is a remedial
statute to be broadly construed and liberally applied." Id.
(citation and internal quotation marks omitted).

## IV.  THE ALJ'S DECISION

Following the above-described five step evaluation process,
ALJ Martin concluded that plaintiff was not disabled under the
Social Security Act. [Tr. 8-27]. At step one, the ALJ found that
plaintiff had not engaged in substantial gainful activity since
September 1, 2014, the alleged onset date.[3] [Tr. 13].

At step two, the ALJ found that plaintiff had fibromyalgia,
migraines, right foot disorder, gastroesophageal reflux disease,
asthma, cervical degenerative disc disease status post
discectomy and fusion, lumbar spine disorder with lower
extremity radiation, and partial vocal cord paralysis with
residual hoarseness, all of which are severe impairments under
the Act and regulations. Id.

At step three, the ALJ found that plaintiff's impairments,

---

[3] The ALJ's ruling states that the disability onset date is
September 1, 2014, [Tr. 13], whereas plaintiff's application for
disability benefits lists the onset date as October 1, 2014.
[Tr. 344, 349]. Other documents in the record state that the
onset date is September 1, 2014. [Tr. 360, 426].

either alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. [Tr. 15]. The ALJ specifically considered Listings 1.04 (disorders of the spine); 3.02A (chronic respiratory disorders) and 11.14 (peripheral neuropathy). [Tr. 15]. The ALJ also conducted a psychiatric review technique and found that plaintiff had a mild restriction in activities of daily living, social functioning, and concentration, persistence or pace. [Tr. 14]. The ALJ found no episodes of decompensation. [Tr. 16].

Before moving on to step four, the ALJ found plaintiff had the RFC

> to perform a full range of sedentary work as defined in 20 CFR 404.1567(a), except she needs a brief, one to two minute opportunity to change positions as often as every 30 minutes. She must avoid all ladders, rope, and scaffold climbing, and is limited to occasional postural motions otherwise. She must avoid all overhead reaching tasks. She is limited to frequent, but no constant upper extremity reaching, handling, and fingering tasks. She must avoid all exposure to dangerous work hazards (unprotected heights and exposed moving machines), extreme humidity, heat, and cold conditions, and concentrated pulmonary irritants. She is limited to detailed but uninvolved work tasks not requiring a fast assembly quota pace.

[Tr. 16].

At step four, the ALJ found plaintiff was unable to perform any past relevant work. [Tr. 20]. At step five, after considering plaintiff's age, education, work

experience and RFC, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform. [Tr. 20-21].

The ALJ concluded that plaintiff had not been under a disability from September 1, 2014, the alleged onset date of disability, through April 20, 2016, the date of the ALJ's decision.

## V.   DISCUSSION

Plaintiff makes several arguments in support of her position that the ALJ's decision should be reversed. The Court will address these arguments in turn.

### A.   There is Substantial Evidence Supporting the ALJ's RFC Determination.

Plaintiff argues that the ALJ failed to properly determine her RFC, alleging that the ALJ "improperly substitutes [her] judgment for that of Dr. Jalaluddin and improperly weighs Dr. Jalaluddin's medical opinion"; "fails to weigh the opinions of Kelley Kampa"; "improperly forms the RFC in the absence of any supporting medical opinion"; "fails to include limitations related to plaintiff's partial vocal cord paralysis"; and "improperly substitutes [her] opinion for the undisputed medical opinions on the issues of sitting, lifting, work pace and/or attendance." [Doc. #12-1 at 18-24].

The ALJ found that plaintiff had the RFC

to perform a full range of sedentary work as defined
in 20 CFR 404.1567(a), except she needs a brief, one
to two minute opportunity to change positions as often
as every 30 minutes. She must avoid all ladders, rope,
and scaffold climbing, and is limited to occasional
postural motions otherwise. She must avoid all
overhead reaching tasks. She is limited to frequent,
but no constant upper extremity reaching, handling,
and fingering tasks. She must avoid all exposure to
dangerous work hazards (unprotected heights and
exposed moving machines), extreme humidity, heat, and
cold conditions, and concentrated pulmonary irritants.
She is limited to detailed but uninvolved work tasks
not requiring a fast assembly quota pace.

[Tr. 16].

### 1. Neurosurgeon Dr. Muhammad Jalaluddin's Opinions

Plaintiff first argues that that the ALJ erred in the
assigning "little weight" to the opinion of her treating
neurosurgeon, Dr. Jalaluddin. [Doc. #12-1 at 18-20].

Pursuant to 20 C.F.R. §§404.1527(c)(2) and 416.927(c)(2), a
treating source's opinion will usually be given more weight than
a non-treating source. If it is determined that a treating
source's opinion on the nature and severity of a plaintiff's
impairment is "well-supported by medically acceptable clinical
and laboratory diagnostic techniques and is not inconsistent
with the other substantial evidence in [the] case record," the
opinion is given controlling weight. 20 C.F.R. §§404.1527(c)(2),
416.927(c)(2). If the opinion, however, is not "well-supported"
by "medically acceptable" clinical and laboratory diagnostic
techniques, then the opinion cannot be entitled to controlling

weight. Id. If the treating source's opinion is not given controlling weight, the ALJ considers the following factors in weighing the opinion: length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence used to support the opinion, consistency of the opinion with the entire record, and the expertise and specialized knowledge of the source. See 20 C.F.R. §§404.1527(c)(2)-(6), 416.927(c)(2)-(6); Social Security Ruling ("SSR") 96-2P, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). If the treating physician's opinion is not supported by objective medical evidence or is inconsistent with other substantial evidence in the record, the ALJ need not give the opinion significant weight. See Poupore, 566 F.3d at 307. "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" Maenza v. Colvin, No. 14-CV-6596, 2016 WL 1247210, at *11 (W.D.N.Y. Mar. 24, 2016)(quoting Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) and citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)("Commissioner's failure to provide 'good reasons' for apparently affording no weight to the opinion of plaintiff's treating physician constituted legal error.").

On June 4, 2014, Dr. Jalaluddin provided a "To Whom It May Concern" letter stating that plaintiff "was seen in my office on June 2, 2014. Due to medical reasons, she may remain on full

duty with the following restrictions: Avoid pushing, pulling and lifting (nothing heavier than a gallon of milk) until next clinic visit." [Tr. 1414]. Dr. Jalaluddin completed three two-page disability assessment forms. One form was a Prudential Insurance Company's "Capacity Questionnaire" dated September 7, 2015 [Tr. 1489-90]. The other two forms are similar treating source "Questionnaire[s];" one is dated January 18, 2016 [Tr. 1491-92] and the other July 20, 2016.[4] [Tr. 110-14].

The ALJ considered the objective medical evidence, physical therapy records, diagnostic testing and Dr. Jalaluddin's own treatment records in her decision. [Tr. 17]. Plaintiff was seen by Dr. Jalaluddin beginning in May 2014, as follow-up for low back and posterior neck pain and numbness of hands, following a motor vehicle accident on March 24, 2014. [Tr. 569-72]. On June 2, 2014, Dr. Jalaluddin reviewed the cervical spine MRI results, observing a "large central disc extrusion at C6-7. This deforms the right aspect of the cord and causes severe right foraminal narrowing." [Tr. 573]. The MRI also showed a "small central disc protrusion at C5-6. No canal stenosis or foraminal narrowing."

---

[4] The January 2016 Questionnaire contains seven questions. The July 2016 Questionnaire contains four questions. Questions 1-3 are identical on both forms and question 7 of the January form is the same as question 4 of the July form. The July form, submitted to the Appeals Council after the ALJ's decision, eliminates questions 4 and 5 contained in the January form. Compare Tr. 1491-92 with 110-14. The ALJ's decision is dated April 20, 2016. [Tr. 8-22].

Id. After discussing different treatment options, including conservative treatment, plaintiff opted for surgery-anterior cervical discectomy C6-7, and fusion with peek device, autograft, bone putty, plate and screws with neuro-monitoring and fluoroscopy. [Tr. 576]. A record dated June 6, 2014, indicates that Dr. Jalaluddin reviewed plaintiff's H & P (history and physical), examined her and found no change "except that [plaintiff's] low back pain was getting worse and she came for bilateral L-5-S1 facet joint and medial nerve injections" with fluoroscopy. [Tr. 753; Tr. 754 (April 19, 2014 Lumbar Spine MRI revealed a central posterior disc herniation without significant impingement or constriction of the thecal sac at L5-S1)]. The doctor noted that he discussed with plaintiff her condition and lumbar spine MRI findings. [Tr. 753-54].

On June 25, 2014, Dr. Jalaluddin performed an anterior cervical discectomy C6-7, and fusion with peek device, autograft, bone putty, plate and screws with neuro-monitoring and fluoroscopy. [Tr. 463-66; 908-10]. Post-surgical notes state that plaintiff reported she was "doing better, the arm pain has significantly improved. There is neck pain that is minimal. The numbness present prior to surgery is resolved." [Tr. 463]. Dr. Jalaluddin noted "[t]here is no sensory impairment for superficial and deep sensation." Id. Plaintiff was discharged the following day. [Tr. 911-13].

On July 15, 2014, plaintiff was seen for surgical follow-up. [Tr. 457-59]. Dr. Jalaluddin noted that plaintiff's "[s]ymptoms have been gradually improving since procedure her radicular arm pain and numbness has been resolved. She is not taking any analgesics." [Tr. 457]. "She states she is feeling much better." [Tr. 457].

Plaintiff was last seen by Dr. Jalaluddin on September 17, 2014 when he examined post-operative x-rays of the cervical spine, dated September 3, 2014, observing that the images are "suggestive of, [w]ell aligned fusion of C6 and C7." [Tr. 448-50]. Plaintiff reported that her symptoms were "gradually improving since procedure", she was experiencing "residual neck and right arm pain and numbness and tingling in right arm" and her "speech/hoarseness of voice is gradually improving." [Tr. 448]. "She states she is feeling better." [Tr. 448]. On examination, the doctor noted that plaintiff had "grade 5/5 power in both upper and lower extremities. DRT [deep tendon reflexes] +1-2 and bilaterally symmetrical on biceps, triceps, supinator, knee and ankle. There is no sensory impairment for superficial and deep sensations. She is ambulating well without assistance." [Tr. 449].

Dr. Jalaluddin suggested an "EMG/NCV to see any changes in C6 nerve." [Tr. 450]. An EMG/NCV study, conducted on October 16, 2014, was an "[e]ssentially unremarkable study without any

significant evidence of neuropathy or radiculopathy noted at the present time." [Tr. 521]. Dr. Jalaluddin did not support his opinion with any clinical findings made in the course of his treatment. See Poupore, 566 F.3d at 307. Additionally, the doctor did not examine plaintiff after September 17, 2014. The ALJ reviewed all of Dr. Jalaluddin's treatment records and concluded that "[t]hese objective findings do not support debilitating limitation." [Tr. 17]. The ALJ's finding is supported by substantial evidence of record.

Further, as set forth above, the ALJ properly considered all the diagnostic imaging, treatment records and physical therapy records for low back pain. [Tr. 17 (summarizing Dr. Jalaluddin's treatment records referencing low back pain, diagnostic imaging and physical therapy records); Tr. 764-786 (physical therapy records from August through October 2014)]. At the time plaintiff was discharged from physical therapy in October 2014, she "noted significant improvement with LB [low back] symptoms, was able to perform exercise in a gym setting." [Tr. 784]. "Pt is independent in HEP [Home Exercise Program], requested to discontinue PT Rx at this time being satisfied with PT Rx results." Id. The discharge summary also states that plaintiff's low back pain at rest was a 1/10 and with activity it was a 3/10. Id. Lower spine range of motion testing was within normal limits and the therapist found minimal to no

limitation with extension and rotation, with some diminished range of motion in the cervical spine. [Tr. 785]. The ALJ's RFC finding that "claimant's back pain through a restriction to sedentary exertion with additional postural limitations" is supported by substantial evidence of record. [Tr. 17].

To the extent that plaintiff contends that the ALJ erred in assigning "little weight" to Dr. Jalaluddin's September 2015 and January 2016 opinions, the Court finds no error. As set forth above, the last time Dr. Jalaluddin examined plaintiff was in September 2014, a full year before the doctor completed the first treating physician Questionnaire. The ALJ's finding that the limitations assessed by the doctor "are too restrictive, given the laboratory findings, and medical signs of record" is supported by substantial evidence. [Tr. 19]. Indeed, in June 2014, before plaintiff had cervical surgery, the doctor stated that plaintiff could "remain on full duty with the following restriction: avoid pushing, pulling and lifting (nothing heavier than a gallon of milk) until next clinic visit." [Tr. 1414]. Simply put, the limitations assessed in 2015 and 2016 were not based on contemporaneous treatment records or physical examinations and cannot be reconciled with the medical evidence. The doctor's treatment records preceding the completion of these Questionnaires do not support these functional limitations. The ALJ gave valid reasons for according little weight to Dr.

Jalaluddin's opinions in determining McIntire's functional
limitations. <u>Legg v.</u> Colvin, 574 F. App'x 48, 49 (2d Cir. 2014).

Indeed, "checklist forms such as [Dr. Jalaluddin's
Questionnaires], which require only that the completing
physician 'check a box or fill in a blank,' rather than provide
a substantive basis for the conclusions stated, are considered
'weak evidence at best' in the context of a disability
analysis." <u>Smith v. Astrue</u>, 359 F. App'x 313, 316 (3d Cir. 2009)
(quoting <u>Mason v. Shalala</u>, 994 F.2d 1058, 1065 (3d Cir. 1993);
<u>Scitney v. Colvin</u>, 41 F. Supp. 3d 289, 301 (W.D.N.Y. 2014)
("Form reports [composed of checklists and fill-in-the-blank
statements] are, by their nature, of limited evidentiary
value.")(citing <u>Gray v. Astrue</u>, No. 09-CV-00584, 2011 WL
2516496, at *5 (W.D.N.Y. June 23, 2011) and <u>Mason</u>, 994 F.2d at
1067); <u>Drejka v. Comm'r of Soc. Sec.</u>, 61 F. App'x 778, 782 (3d
Cir. 2003)("The ALJ was entitled to review the record in
totality and to discount the treating physician's
opinion...[claimant's] treating physician made the determination
that she was disabled only in a form report. We have
characterized such a form report, in which the physician's only
obligation was to fill in blanks, as "'weak evidence at
best.'")(quoting <u>Mason</u>, 994 F.2d at 1065). The Court finds that
the ALJ appropriately considered the nature of the Questionnaire
form requiring the doctor to check-off or circle a claimant's

limitations.

Accordingly, the Court finds that the ALJ's assessment of Dr. Jalaluddin's opinions was not error and was supported by substantial evidence.

### 2. Physician Assistant Kelley Kampar's Opinion

Plaintiff argues, almost in passing, that the ALJ improperly assessed the February 2016 opinion of Physician Assistant Kelley Kampa. [Doc. #12-1 at 20].

Only "acceptable medical sources" are considered treating sources whose opinions are entitled to controlling weight. See 20 C.F.R. §§404.1527(a)(2), (c), 416.927(a)(2), (c). Acceptable medical sources include, inter alia, licensed physicians and licensed or certified psychologists. See 20 C.F.R. §§ 404.1513(a), 416.913(a). Therapists, APRNs, physician assistants, and LCSWs, amongst others, are not acceptable medical sources, but are rather considered "other sources." See 20 C.F.R. §404.1513(d)(1)-(4), 416.913(d)(1)-(4); Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939, at *2 (S.S.A. Aug. 9, 2006).[5] Opinion evidence from these "other sources" may

---

[5] 20 C.F.R. §404.1513(d)(1)-(4), 416.913(d)(1)-(4) and SSR 06-03P were rescinded on March 27, 2017. It was in effect at the time of the ALJ's decision. At the time of the Appeals Council's action, 20 C.F.R. §404.1527(c)(2017), effective March 27, 2017, provided that only acceptable medical sources could be considered a treating source and afforded controlling weight. 20 C.F.R. §404.1527(c)

be used to show "the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work[.]" 20 C.F.R. §§404.1513(d), 416.913(d). An ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" SSR 06-03P, 2006 WL 2329939, at *6.

Physician Assistant Kampa completed a two-page questionnaire on February 3, 2016.[6] [Tr. 1658-59]. Plaintiff contends that the "ALJ is required [to] assess all medical evidence" and provided "no meaningful explanation why the ALJ did not adopt Kampa's assessments." [Doc. # 12-1 at 2]. However, plaintiff cites no treatment records from PA Kampa to support her opinion. While the ALJ did not state she afforded Ms. Kampa's opinion little weight, it is clear from her analysis of the treatment records, diagnostic testing and conclusion that "the evidence, including the postsurgical cervical x-rays, lumbar MRI, and examinations..." did not support the restrictions assessed by PA Kampa. [Tr. 20]; see Clutter v.

---

[6] PA Kampa also provided a "To Whom It May Concern" letter dated May 13, 2016, providing a summary of her medical conditions and an opinion on plaintiff's ability to work. [Tr. 122]. This letter post-dates the ALJ's ruling and was submitted to the Appeals Council. The Court addresses this opinion later in this ruling.

Comm'r Soc. Sec., 628 F. App'x 155, 157 (3d Cir. 2016) (holding the ALJ's failure to explain what weight, if any, she accorded to a treating source opinion did not warrant remand where the ALJ clearly considered the opinion and discussed the evidence relied on in assessing the RFC sufficient to permit meaningful review); Zulinski v. Astrue, 538 F. Supp. 2d 740, 751-52 (D. Del. 2008)(finding not a "medical opinion" where the doctor's medical statement was only two paragraphs, provided only a general list of plaintiff's ailments, did not describe practical limitations and stated only a legal conclusion on disability properly left to the Commissioner. "Though the ALJ was remiss in not specifically iterating that she rejected [the doctor's] opinion; the court assigns no error."). The Court finds no error on this claim.

### 3. Vocal Chord Paralysis

Plaintiff argues that the ALJ did not properly assess the limitations caused by her vocal cord paralysis; however, there is substantial evidence in the record to support the ALJ's assessment that "objective findings do not support debilitating limitations." [Tr. 19 (citing Tr. 445-47 (October 2014 noting "appropriately verbally conversant with breathy dysphonia", "fiberoptic examination of the hypopharynx revealed moderate erythema of the lingual tonsils", "tongue base was normal"; "no abnormal lymphoid tissue"; "no mass lesions" and "fiberoptic

examination of the larynx revealed <u>mild</u> post cricoid erythema.
No lesions or masses...right true vocal fold remains paretic in
the paramedian position."); Tr. 1458-60 (August 2014 XR
Swallowing Function with video summarizing findings of <u>mild</u>
oropharyngoesophageal dysphagia, <u>mild</u> decrease in laryngeal
elevation, <u>mild</u> decrease in the PES opening and <u>mild</u> increase in
the time needed for soft and solid foods to pass through mid-
esophagus); Tr. 1522 (April 2015 follow up appointment stating
that a fiberoptic examination found <u>mild</u> reflux changes, no
lesions or masses, right vocal fold remained paretic, good
vocalis muscle tone noted, with no evidence of penetration or
aspiration noted); Tr. 1547 (August 2015 reporting that a
prednisone injection to her right vocal cord helped, "but she
has started going back to a weak voice."); Tr. 1556, 1559
(September 2015 reporting voice is stronger but not consistent,
"worse in the mornings", "worse if she yells", "she has had
improvement"; Tr. 1583, 1586 (December 17, 2015 post-op check
following a right type 1 thyroplasty. "She has had improvement
with her voice, but it comes and goes a little bit." "[G]ood
initial result"); Tr. 1592 (December 31, 2015, follow-up after a
right type 1 thyroplasty reporting that "overall feels her voice
is stronger, but it has times of hoarseness.")]; <u>see also</u> Tr.
101 (treatment record submitted to the Appeals Council dated
August 31, 2016, "pt reports, "If it weren't for my 14 year old

nephew, I probably wouldn't yell as much but he pushes by buttons until I get hoarse." Discussed with pt. that additional voice therapy is not warranted at his time and that she will need to follow through with the recommendations made by SLP [speech language pathologist] to target relaxation and reduced tension. Pt in agreement with plan.").

The ALJ's decision reflects that she did, in fact, consider plaintiff's allegations of a "significant vocal issue", their consistency or inconsistency with the objective medical evidence, and how such complaints resulted in <u>some</u> functional limitations. The Court finds that the ALJ's decision reflects that she considered plaintiff's subjective complaints regarding vocal cord paralysis with residual hoarseness along with her hearing testimony, and the objective medical records. <u>See</u>, <u>e.g.</u>, Tr. 16 (noting plaintiff's testimony that when "she talked for a period of time her voice went in and out."); Tr. 19 (summarizing medical records and diagnostic testing); Tr. 17 (making credibility determination as "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record.").[7] Indeed, the ALJ specifically included a

[7] The Court further recognizes that the ALJ had an opportunity to personally observe plaintiff at the hearing. <u>Cf.</u> <u>Suarez v.</u> <u>Colvin</u>, No. 14CV6505(AJP), 2015 WL 2088789, at *23 (S.D.N.Y. May 6, 2015) ("[C]ourts must show special deference to an ALJ's

"speaking or talking limitations" in a hypothetical to the VE "limiting the individual to occasional speaking or talking" for the job under consideration. [Tr. 257 (VE testifying that the job of surveillance system monitor would not be impacted by this limitation.)]. The Court finds no error on this claim.

Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

### 4. The RFC is Supported by Substantial Evidence

Plaintiff argues the RFC is not supported by medical opinion, [Doc. #12-1 at 20-21] and the ALJ improperly substituted her opinion for the undisputed medical opinions on plaintiff's ability to sit, lift, work pace and/or attendance. [Doc. #12-1 at 22-24].

Despite plaintiff's arguments to the contrary, the ALJ's RFC determination is supported by substantial evidence of record. Specifically, the ALJ conducted a detailed review of the relevant evidence, including plaintiff's testimony, treatment notes from plaintiff's medical providers, and the medical opinions of record. [Tr. 16-20].

---

credibility determinations because the ALJ had the opportunity to observe plaintiff's demeanor while [the plaintiff was] testifying." (quoting <u>Marquez v. Colvin</u>, No. 12CV6819(PKC), 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013))).

The ALJ appropriately noted the medical evidence, the
reports of other physicians, and specifically Dr. Jalaluddin's
treatment records, in weighing the opinions and assessing the
RFC. Indeed, the ALJ demonstrated that she carefully considered
Doctors Jalaluddin, Charnetski, Kilpatrick's treatment records
and diagnostic testing. [Tr. 17; Tr. 125, 449, 458, 460, 463,
466, 468, 471, 473, 476, 557, 836, 861, 868 (noting normal motor
strength on examination; no sensory impairment for superficial
and deep sensation; ambulating well without assistance; muscle
strength is normal in both arms and legs; motor tone is normal
in both upper and lower extremities; normal range of motion );
Tr. 521 (noting October 2014 EMG Nerve Conduction study showed
no significant evidence of neuropathy or radiculopathy); Tr.
125, 476, 525, 794, 861, 868 (noting normal gait and station).
Plaintiff did not return for treatment after September 2014, a
year or more before the doctor rendered his opinions in
September 2015 and January 2016. The limitations noted in the
treatment records and the diagnostic testing support the ALJ's
RFC findings.[8] Other substantial evidence of record, recited in

---

[8] Records submitted to the Appeals Council also contain similar
examination findings. [Tr. 83, 91 (May 2017, noting normal deep
tendon reflexes, normal strength in upper and lower
extremities); Tr. 81, 89 (May 2017, plaintiff reported that
"prior to her stimulator she had sciatica...spasms and trouble
walking"); (Tr. 100 (Dr. Clark recommending plaintiff not
"consider any job that would require constant talking for
anymore than three hours a day, as she would definitely

the Court's discussion above, also supports the ALJ's findings.

Thus, for the reasons stated, the Court finds no error in the ALJ's RFC assessment, which is supported by substantial evidence of record.

**B.   Step Five Analysis**

Plaintiff next argues that the ALJ's Step Five determination is not supported by substantial evidence because the vocational expert's testimony was based on a faulty hypothetical. [Doc. #12-1 at 24]. These arguments are essentially a rehashing of the earlier allegations that the ALJ did not properly determine plaintiff's RFC. For the reasons set forth above, the ALJ properly weighed all the evidence and determined an RFC that was supported by substantial evidence of record.

Substantial evidence supports the ALJ's determination that the plaintiff can perform a significant number of jobs in the national economy. As discussed, the ALJ properly weighed the

---

fatigue.... She will  need to continue looking for a job that would allow her times of vocal rest throughout the day."); Tr. 101 (August 2016, speech and language therapist stating that "additional voice therapy is not warranted at this time"); Tr. 108 (February 2017, on examination noting "Motor: 5/5 in all major muscle groups, Reflexes: 2+ and symmetric, Coordination: normal, Gait and station: normal, Tremor: fine tremor right hand at rest, intensifies with intention and posturing. No head, chin or voice tremor. Mild left hand tremor."); Tr. 125 (April 2016, on examination noting "normal range of motion" and "normal gait").

medical evidence at issue, and her RFC and credibility findings are supported by substantial evidence of record. As to whether there are jobs that the plaintiff can perform, the VE testified that given the RFC determined by the ALJ, the plaintiff would be able to perform occupations such as surveillance system monitor and charge account clerk. [Tr. 21, 256-67]. The ALJ also asked the VE to consider a speaking or talking limitation and the VE testified that the surveillance system monitor would not be impacted by this limitation. [Tr. 257]. "The Commissioner need show only one job existing in the national economy that [claimant] can perform." Bavaro v. Astrue, 413 F. App'x 382, 384 (2d Cir. 2011)(citing 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1566(b)). As the testimony of the VE is consistent with the findings of the ALJ and the evidence in the record, there is substantial evidence supporting the ALJ's determination that the plaintiff can perform a significant number of jobs that exist in the national economy. Accordingly, this argument is without merit. See, e.g., Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009) (citations omitted)("An ALJ may rely on a vocational expert's testimony regarding a hypothetical so long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved."); Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 114 (2d Cir. 2010)("Because we find no error in the

ALJ's RFC assessment, we likewise conclude that the ALJ did not err in posing a hypothetical question to the vocational expert that was based on that assessment.")(citing Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)(approving a hypothetical question to a vocational expert that was based on substantial evidence in the record)).

As noted earlier, the Court's role in reviewing a disability determination is not to make its own assessment of the plaintiff's capabilities; it is to review the ALJ's decision for any reversible error. Whether there is substantial evidence supporting the plaintiff's view is not the question here.

Accordingly, the Court finds no error in the ALJ's reliance on the vocational expert's testimony in support of her determination at step five.

### C. The Appeals Council Properly Denied Review

Finally, the Court finds that the Appeals Council properly denied plaintiff's request for review of the ALJ's decision and properly concluded that "[t]his additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before April 20, 2016." [Tr. 2].

At the Appeals Council review stage, a claimant is allowed to "submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision." Perez v. Chater, 77

F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. §§404.970(b),
416.1470(b)). Under the regulations, the plaintiff is expressly
allowed to submit new evidence to the Appeals Council without
demonstrating good cause. The Appeals Council must consider new
and material evidence if it is related to the relevant time
period. See Perez, 77 F.3d at 45. If it fails to do so, the
reviewing court must remand the case for reconsideration in
light of the new evidence. See McIntire v. Astrue, 809 F. Supp.
2d 13, 22 (D. Conn. 2010). When, as here, the Appeals Counsel
denies review of the ALJ's decision, the new evidence submitted
"becomes part of the administrative record for judicial review."
Perez, 77 F.3d at 45.

Here, plaintiff argues that the Appeals Council failed to
properly consider "newly submitted evidence, failed to consider
application of the treating physician rule, and otherwise failed
to weigh the new medical evidence." [Doc. #12-1 at 10]. She
argues that the Appeals Council improperly discounted a treating
source statement "Questionnaire" from Dr. Jalaluddin dated July
20, 2016, covering the period of September 7, 2015 through the
present, because it did not relate to the disability period at
issue. [Doc. 12-1 at 11; Tr. 2; Tr. 111-14].

Evidence is "new" when it "has not been considered
previously during the administrative process," and the reports
are not "cumulative to those already contained in the record."

DelValle v. Apfel, 97 F. Supp. 2d 215, 222 (D. Conn. 1999).
Evidence that is cumulative to that already contained in the
record prior to the ALJ decision is, by definition, not "new"
and need not be considered. See id. Evidence is material if it
is (i) relevant to the time period for which benefits have been
denied and (ii) probative, meaning it provides a reasonable
probability that the new evidence would have influenced the
Commissioner to decide the claimant's application differently.
See Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir.1988); Webb v.
Apfel, No. 98 Civ. 791, 2000 WL 1269733, at *14 (W.D.N.Y. Feb.
8, 2000).

The medical report from Dr. Jalaluddin submitted to the
Appeals Council is cumulative because it contains essentially
the same limitations found in Dr. Jalaluddin's prior treatment
source statement dated January 18, 2016. See Tr. 1791-92; 111-
14]. In January 2016, the doctor opined that plaintiff would be
off task "[g]reater than 20% but less than 33%" of the day. [Tr.
1492]. In July 2016, he opined that plaintiff would be off task
"[m]ore than 33% of the day." [Tr. 114]. For the reasons
previously stated in this opinion, the medical evidence does not
support the limitations contained in either opinion. Nor are
there any treatment records from Dr. Jalaluddin after his
earlier January 2016 opinion or after the ALJ's decision, to
support greater limitations in July 2016. As previously stated,

Dr. Jalaluddin last examined plaintiff in September 2014. Here the excluded opinion is essentially duplicative of an opinion already considered by the ALJ. Moreover, the additional limitations are not supported by medical evidence. Although the Appeals Council erred in stating that it was outside the disability period under consideration, the error is harmless as the opinion is clearly cumulative and would not have changed the Commissioner's decision.

> Remand is unnecessary, however, "where application of the correct legal principles to the record could lead [only to the same] conclusion, there is no need to require agency reconsideration." Johnson [v. Bowen], 817 F.2d [983] 986 [(2d Cir. 1987)]; see also Havas v. Bowen, 804 F.2d 783, 786 (2d Cir.1986) (declining to remand for consideration of a treating physician's opinion where there was no substantial evidence to refute the treating physician's conclusion that the claimant could not return to his prior employment).

Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010). For the reasons previously stated, the Court finds that the excluded opinion is cumulative and would not have changed the ALJ's determination that plaintiff was not disabled during the disability period. [Tr. 2]. Accordingly, remand for consideration of the improperly excluded opinion is unnecessary.

Similarly, the Court finds no error in the Appeals Council's treatment of PA Kampa's May 13, 2016, "To Whom It May Concern" letter. [Tr. 122]. For the reasons already set forth in this opinion, PA Kampa was a non-treating and non-acceptable

medical source and the opinion is not supported by the medical evidence. The May 2016 opinion is also cumulative. Because the opinion submitted to the Appeals Council is essentially the same as the February 2016 opinions considered by the ALJ and rejected, the Council's failure to address PA Kampa's May 2016 letter is not reversible error. [Tr 122; 1658-59 (Questionnaire); 1712 ("To Whom It May Concern" letter]; Zabala, 595 F.3d at 409.

Additionally, defendant correctly argues that "[e]ven were the Appeals Council required to consider her opinion, an opinion that claimant is disabled is never entitled to significant weight, even if offered by a treating physician, which Ms. Kampa was not." [Doc. #19-1 at 20-21 (citing 20 C.F.R. §404.1527(d)(3)("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner."); Freeman v. Comm'r of Soc. Sec., No. 7:11-CV-1276 GLS, 2012 WL 2374726, at *3 (N.D.N.Y. June 22, 2012)("As for the ALJ's failure to acknowledge the opinions of two treating sources, each of whom opined that Freeman would only work part-time,...those opinions 'are not medical opinions,...but are instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case.'")(quoting 20 C.F.R. §404.1527(d), 416.927(d))]. For the reasons previously stated, the Court finds

that the excluded opinion is cumulative and would not have changed the ALJ's determination that plaintiff was not disabled during the disability period. [Tr. 2].

Accordingly, the Court finds no error by the Appeals Council denying plaintiff's request for review.

**-VI. CONCLUSION**

For the reasons stated, plaintiff's Motion for Judgment on the Pleadings **[Doc. #12]** is **DENIED.** Defendant's Motion for Judgment on the Pleadings **[Doc. #19]** is **GRANTED.**

Plaintiff's Complaint [Doc. #1] is **DISMISSED with PREJUDICE.** The Clerk of the Court is directed to enter judgment and close this case.

This is not a Recommended Ruling. The parties consented to proceed before a United States Magistrate Judge [doc. #15] on September 25, 2018, with appeal to the Court of Appeals. Fed. R. Civ. P. 73(b)-(c).

SO ORDERED at Bridgeport, Connecticut this 12th day of March 2019.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE